UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-22687-Civ-UNGARO
MAGISTRATE JUDGE P.A. WHITE

DAGOBERTO MARTINEZ,                    :

    Petitioner,                        :

v.                                     :        REPORT OF
                                                MAGISTRATE JUDGE
WALTER A. McNEIL,                      :

    Respondent.                        :
_____

I. Introduction

Dagoberto Martinez, who is presently confined at Hardee Correctional Institution in Bowling Green, Florida, has filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. §2254, attacking his conviction and sentence in case number F01-15483 entered in the Eleventh Judicial Circuit Court for Miami-Dade County.

This cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. § 636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2254 Cases in the United States District Courts.

The Court has before it the petition for writ of habeas corpus, the Respondent's response to an order to show cause and appendix of exhibits and the petitioner's reply.

The petitioner raises the following claims:

1.   The trial court abused its discretion in denying

1

petitioner's motion for discharge violating petitioner's right to a speedy trial in contravention of the Sixth and Fourteenth Amendments of the United States. (DE#2:3).

2.   The trial court erred in denying petitioner's motion for judgment of acquittal on the charge of second degree murder, denying petitioner his right to due process guaranteed to him by the Sixth and Fourteenth Amendments of the United States Constitution. (DE#2:9).

3.   The trial court erred in denying petitioner's requested jury instruction on manslaughter depriving petitioner of a fair trial, guaranteed to him by the Sixth and Fourteenth Amendments of the United States Constitution. (DE#2:11).

## II. Procedural History

The procedural history of the underlying state court conviction reveals as follows. On June 5, 2001, the petitioner was charged by Information with second-degree murder in violation of Fla. Stat. section 782.04(2). (R:1-3).

After numerous continuances (See Case No. F01-5483 Docket Sheet, DEs#87,96,111,131,136), on February 11, 2003, the petitioner proceeded to trial (T:1), wherein he was found guilty as charged and (T:779;R:161) was subsequently adjudicated guilty. (R:162-164). On May 27, 2003, he was sentenced to a term of life imprisonment. (R:170-195).

2

Thereafter, on June 25, 2003, the petitioner filed a timely notice of appeal to the Third District Court of Appeal in case number 3D03-1695. (App.B); (see also 3d DCA Case Docket in case no. 3D03-1695). His initial brief, filed on December 15, 2003, raised the following claims:

    I.   Whether the trial court erred in denying defendant's motion to discharge on speedy trial grounds.

    II.  Whether the trial court erred in denying defendant's motion for judgment of acquittal on the charge of second degree murder.

    III. Whether the trial court erred in denying defendant's requested jury instruction on manslaughter.

(App.C). On May 12, 2004, the Third District Court of Appeal, affirmed the petitioner's conviction and sentence. Martinez v. State, 873 So.2d 1230 (Fla. 3d DCA 2004); see also (App.E). The mandate was thereafter issued on May 28, 2004. (App.F). Discretionary review from the Florida Supreme Court was not sought.

Approximately five months of untolled time expired until January 19, 2005, when the petitioner returned to state court, filing a motion for post-conviction relief, pursuant to Fla.R.Crim.P. 3.850 raising the following claims, verbatim:

    (A)  Ground One: The court erroneously den[ied] motion in limine when the evidence substantiated the said motion.

    (B)  Ground Two: The court was prejudicial toward defendant by denying oral motion to suppress personal opinion of witness.

    (C)  Ground Three: The State misled the court pertaining the score sheet guidelines based on a

miscalculation and the court fail[ed] to verify if calculation were true before announcing to defendant which was the bottom of the guidelines.

(D)   Ground Four: Ineffective assistance of counsel during jury selection by discussing pregnancy of victim.

(E)   Ground Five: Ineffective assistance of counsel during jury selection and opening statement by admitting to defendant's guilt in his opinion.

(F)   Ground Six: Over the defense counsel's objection and motion in limine, the court erroneously denied motion and admitted evidence based on speculation.

(G)   Ground Seven: The court erroneously denied motion for reduction of charges based solely by the number of wounds inflicted on the victim, not considering the relevant evidence at trial that proved a lesser charge.

(H)   Ground Eight: At the conclusion of the competence to stand trial hearing, the court denied motion to mistrail [sic] based on erroneous decision.

(I)   Ground Nine: The court mistakenly sentence[d] defendant to the maximum sentence when the evidence and mitigating factor existed for the court to follow the PSI recomendation [sic] to sentence the defendant within the guidelines.

(App.G). Following the response from the State (App.H), the trial court issued an order denying relief on February 13, 2009, stating in pertinent part as follows:

In regards to the Defendant's first issue of court error in denying motion in limine, said allegation is not cognizable as a Rule 3 motion and is hereby Denied. This allegation could have, should have or was raised on direct appeal. *See McCrae v. State*, 437 So.2d 1338, 1390 (Fla.1983).

In regards to the Defendant's second issue of the court being prejudicial by denying motion to suppress, said

4

allegation is not cognizable as a Rule 3 motion and is hereby Denied. This allegation could have, should have or was raised on direct appeal. *Id.*

In regards to the Defendant's third issue of State misleading court resulting in court's failing to verify the guideline calculation, said allegation is not cognizable as a Rule 3 motion and is hereby Denied. Furthermore, this allegation is without merit. The record is clear that the parties had discussions but no formal plea offer was ever extended to the Defendant. Twenty-five (25) years in state prison was discussed but the Defendant stated he did not want. The State later pointed out that based on a miscalculation on the guideline worksheet, the bottom of the Defendant's guideline was 31.67 years. However, the court made it clear to the Defendant that it was not extending an offer in this case (See attached 'Exhibit I' pages 20, lines 17-19). The Defendant also stated to the court that he would not accept any offers in this case. (See attached 'Exhibit I' page 20 lines 3-9). Therefore any incorrect information provided to the court is harmless in this context, because the Defendant did not want to accept any plea offers.

In regards to the Defendant's fourth issue of ineffective assistance of counsel by discussing pregnancy of victim in voir dire, said allegation is without merit and therefore denied. Defendant admits in his first issue that defense counsel tried to keep the information regarding the victim's pregnancy out of court by making a motion in limine to exclude it and the court denied the request. After the court denied the request, it was imperative that defense counsel address the issue in voir dire to find out which of the jurors may be offended or bias after hearing that the victim may have been pregnant. Furthermore, the Defendant was not charged with killing the unborn fetus. Therefore, this court correctly found that the fact that the victim was pregnant was inextricably intertwined to show motive, even if that information was omitted, there is still no reasonable probability that the outcome would have been different.

In regards to the Defendant's fifth issue of ineffective assistance of counsel for admitting the Defendant's guilt, said allegation is conclusively refuted by the record and without merit. (See attached 'Exhibit II'). The theory of defense selected by the Defendant was self-

defense. In order to avail oneself of that theory, one has to admit that he/she was there and that he/she actually committed the act. Albeit, in defense of oneself. Otherwise the self-defense theory would not make sense. The facts of the case showed that the victim went to see the Defendant because he had called her to let her know that he was willing to sign the divorce papers. While she was at his brother's house, where the Defendant was staying, he killed her. The Defendant's own brother and sister-in-law called the police and testified that they saw him standing over the body with the knife in his hand. The self-defense theory was probably one of the few if not the only defense theory that the Defendant had available to him.

In regards to the Defendant's sixth issue of the court erroneously denying defense motion and admitting speculation evidence, said allegation is not cognizable as a Rule 3 motion and is hereby Denied. This allegation could have, should have or was raised on direct appeal.

In regards to the Defendant's seventh issue of the court erroneously denying motion for reduction of charges, said allegation is not cognizable as a Rule 3 motion and is hereby Denied. This allegation could have, should have or was raised on direct appeal.

In regards to the Defendant's eight [sic] issue of the court erroneously denying his motion for mistrial, said allegation is not cognizable as a Rule 3 motion and is hereby Denied. This allegation could have, should have or was raised on direct appeal.

In regards to the Defendant's ninth issue of the court mistakenly sentencing the Defendant to the maximum sentence, said allegation is not cognizable as a Rule 3 motion and is hereby Denied. This allegation could have, should have or was raised on direct appeal. The fact remains that the Defendant's sentence is within the statutory maximum sentence and it is not illegal.

Based on *Strickland v. Washington*, 466 U.S. 668 (1984), a determination must be made as to 'whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial can not be relied upon as having produced a just result.' *Id.* at 686. Furthermore, the Defendant has the burden of satisfying a two pronged test:

First, the Defendant must show that counsel's
performance was deficient. This requires showing
that counsel made errors so serious that counsel
was not functioning as the 'counsel' guaranteed by
the Defendant by the Sixth Amendment. Second, the
Defendant must show that the deficient performance
prejudiced the defense. This requires showing that
counsel's errors were so serious as to deprive the
Defendant of a fair trial, a trial whose result is
reliable. *Id.* at 686.

In light of the foregoing discussion and considering the
totality of circumstances, the Defendant did not meet his
burden on either of the two prongs in the *Strickland*
test. This Court does not find counsel's performance
herein to be deficient under the *Strickland* test. Acts or
omissions of counsel found to be based on professional
judgment or trial strategy are not considered in support
of an ineffectiveness claim. *See Kelly v. Florida*, 569
So.2d 754 (Fla. 1990).

Based on the foregoing discussion, Defendant's post
conviction motion is hereby DENIED.

(App.L).

The movant appealed and on May 27, 2009, the Third District
Court of Appeal affirmed the trial court's order denying the Rule
3.850 motion in all respects. <u>Martinez v. State</u>, 11 So.3d 958 (Fla.
3d DCA 2009); <u>see also</u> (App.N). On June 23, 2009, the mandate was
issued. (App.O).

While the petitioner's motion for post-conviction relief was
pending with the trial court, he filed a petition for writ of
habeas corpus for belated appeal in case number, 3D07-812, wherein
he requested the appellate court to permit him to file a belated
appeal regarding the denial of his 3.850 motion. (App.I). In
essence, the petitioner argued he failed to receive a copy of the
order denying his Rule 3.850 motion, alleging he learned of said
denial after the Clerk of the Court advised him that the trial

court denied his motion on October 11, 2005. (Id.). Subsequent to
the State filing its response arguing that the petitioner was not
entitled to a belated appeal because the trial court had not yet
rendered an order regarding his Rule 3.850 motion, thus making his
attempt to appeal premature (App.J), the Third District Court of
Appeal, on August 10, 2007, dismissed his petition. Martinez v.
State, 961 So.2d 952 (Fla. 3d DCA 2007); see also (App.K).

Subsequent to the Third District Court's dismissal of his
motion for belated appeal, but prior to the trial court's opinion
on his motion for post-conviction relief, on October 9, 2008, the
petitioner filed a petition for writ of mandamus with the Third
District Court of Appeal, case number 3D08-2613, requesting the
appellate court to order the trial court to rule on his Rule 3.850
motion filed on January 19, 2005. (See 3rd DCA Case Docket, Case
No. 3D08-2613). Subsequent to the State filing a response thereto,
the Third District Court, on February 4, 2009, granted the
petitioner's writ of mandamus. (Id.).

Prior to filing his federal habeas corpus petition, the
petitioner returned to the Third District Court of Appeal on March
11, 2009 and filed a notice of appeal regarding the final order of
the trial court's decision rendered on February 13, 2009 regarding
his motion for post-conviction relief in case number 3D09-851. (See
3rd DCA Case Docket, Case No. 3D09-851). Without requiring a
response from the State, the appellate court affirmed the trial
court's order. (Id.).

Approximately two and a half months after the Third District
Court of Appeal affirmed the petitioner's post-conviction motion in
case no. 3D09-851, the petitioner filed the instant petition on

8

September 2, 2009,[1] alleging the aforementioned claims.

### III. Statute of Limitations

The respondent concedes the petitioner's 28 U.S.C. §2254 motion was timely filed.

### IV. Exhaustion & Procedural Default

The respondent first argues correctly that this claim is unexhausted because it was only raised in the petitioner's initial brief on direct appeal as a violation of state law, supported only by citation to Florida cases and rules, and therefore has not been exhausted for purposes of federal habeas corpus review. See, e.g., Baldwin v. Reese, supra; Duncan v. Henry, 513 U.S. 364, 365 (1995)(claim of evidentiary error not exhausted for purposes of federal review where presented to the state courts only as a violation of state law, and not expressly as a violation of due process guaranteed by the Fourteenth Amendment).

Moreover, as the respondent also correctly contends, dismissal of an unexhausted federal claim is not warranted where further efforts to exhaust the claim in state court would be futile. Givens v. Green, 12 F.3d 1041 (11th Cir. 1994). In this case, since any further attempts by the petitioner to return to the state forum to seek additional collateral review would be dismissed as both untimely and successive, it would be futile to allow him an opportunity to do so, so this claim is thus procedurally defaulted from federal review. Collier v. Jones, 910 F.2d 770, 773 (11th Cir.

---

[1] The Eleventh Circuit recognizes the "mailbox" rule in connection with the filing of a prisoner's petition for writ of habeas corpus. Adams v. United States, 173 F.3d 1339 (11th Cir. 1999) (prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing).

1990)(where dismissal to allow exhaustion of unexhausted claims would be futile due to state procedural bar, claims are procedurally barred in federal court as well). In this case, the petitioner has failed to establish cause or prejudice arising from these defaulted claims. Nevertheless, the claims fail on the merits and thus will be discussed briefly _infra_.

The exhaustion doctrine requires the petitioner to "fairly present" his federal claims to the state courts in a manner to alert them that the ruling under review violated a federal constitutional right. Duncan v. Henry, 513 U.S. 364, 365-66 (1995) (_quoting_ Picard v. Connor, 404 U.S. 270, 275 (1971)). Exhaustion is not satisfied "merely" if the petitioner presents the state court with "all the facts necessary to support the claim" or even if a "somewhat similar state-law claim was made." Kelley v. Sec'y for Dept. of Corr., 377 F.3d 1317, 1344 (11th Cir. 2004)(citation omitted). The petitioner must instead "present his claims to the state courts such that they are permitted the 'opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim.'" Id. (_quoting_ Picard, 404 U.S. at 277).

"'Thus, to exhaust state remedies fully the petitioner must make the state court aware that the claims asserted present federal constitutional issues.'" Jimenez v. Fla. Dep't of Corr., 481 F.3d 1337, 1342 (11th Cir. 2007)(_quoting_ Snowden v. Singletary, 135 F.3d 732, 735 (11th Cir. 1998))(concluding that the issue was raised where the petitioner did not specifically state on direct appeal that these issues were to be reviewed under the Federal Constitution, but he provided enough information about the claims (including cites to Supreme Court cases) to notify the state courts that the challenges were being made on both state and federal grounds.). "A litigant wishing to raise a federal issue can easily

10

indicate the federal law basis for his claim in a state court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" <u>Baldwin</u>, 541 U.S. at 32.

As to these claims, the petitioner cited exclusively to state cases, and all of his substantive arguments addressed Florida law. None of the cases he cited were decided on federal grounds and he did not otherwise indicate that he intended to raise federal claims. <u>Baldwin</u>, 541 U.S. at 32. Thus, the petitioner has failed to exhaust his federal claims.

Moreover, the petitioner would now be barred from raising his constitutional claims before the state court. Florida law procedurally bars new claims or claims that have already been raised in prior petitions when "the circumstances upon which they are based were known or should have been known at the time the prior petition was filed." <u>Johnson v. Singletary</u>, 647 So.2d 106, 109 (Fla. 1994). In order to overcome this procedural bar in federal court, petitioners must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991); <u>Smith v. Jones</u>, 256 F.3d 1135, 1138 (11th Cir. 2001). No such showing has been made here.

## V. Standard of Review

A prisoner in state custody may not be granted a writ of habeas corpus for any claim that was adjudicated on the merits in state court unless the state court's decision was (1) "contrary to,

or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented" to the State court. 28 U.S.C. § 2254(d)(1), (2); <u>see</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06 (2000); <u>Fugate v. Head</u>, 261 F.3d 1206, 1215-16 (11th Cir. 2001).

A state court decision is "contrary to" or an "unreasonable application of" the Supreme Court's clearly established precedent within the meaning of §2254(d)(1) only if the state court applies a rule that contradicts the governing law as set forth in Supreme Court case law, or if the state court confronts a set of facts that are materially indistinguishable from those in a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. <u>Brown v. Payton</u>, 544 U.S. 133, 141 (2005); <u>Williams</u>, 529 U.S. at 405-06. In the habeas context, clearly established federal law refers to the holdings of the Supreme Court's decisions as of the time of the relevant state-court decision. <u>Hall v. Head</u>, 310 F.3d 683, 690 (11th Cir. 2002) (citing <u>Williams</u>, 529 U.S. at 412). However, in adjudicating a petitioner's claim, the state court does not need to cite Supreme Court decisions and the state court need not even be aware of the Supreme Court cases. <u>See</u> <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002); <u>Parker v. Sec'y, Dep't of Corr.</u>, 331 F.3d 764, 775-76 (11th Cir. 2003).

So long as neither the reasoning nor the result of the state court decision contradicts Supreme Court decisions, the state court's decision will not be disturbed. <u>Id.</u> Further, a federal court must presume the correctness of the state court's factual findings unless the petitioner overcomes them by clear and convincing evidence. <u>See</u> 28 U.S.C. § 2254(e)(1); <u>Putman v. Head</u>,

12

268 F.3d 1223, 1241 (11th Cir. 2001).

## VI. Discussion

In **claim one**, the petitioner asserts that the trial court abused its discretion in denying petitioner's motion for discharge violating petitioner's right to a speedy trial in contravention of the Sixth and Fourteenth Amendments of the United States. (DE#2:3).

In support thereof, he argues he did not receive police reports, the lead detective's report, sworn statements, crime scene photographs and the medical examiner's reports until late into the discovery process, thus compelling him to choose between his right to discovery and his right to a speedy trial. (DE#2:3-8).

Despite the movant's contentions and although this claim is unexhausted and prospectively procedurally barred, in an abundance of caution, this claim will be addressed on the merits, since it fails to warrant relief.

The Eleventh Circuit has long recognized that a possible violation of the Florida rule requiring trial within the specified number of days from the date of arrest merely constitutes a violation of state procedural rules which does not in any way go to the fundamental fairness of the trial and as such is not reviewable by a federal court on a petition for writ of habeas corpus. See Davis v. Wainwright, 547 F.2d 261, 264 (11th Cir. 1977). Further, nowhere in the United States Constitution is there found a right to be brought to trial within a certain number of days. Although there is a right to a "speedy" trial found in the Sixth Amendment, this right is "a more vague concept than other procedural rights." Barker v. Wingo, 407 U.S. 514, 521 (1972).

13

Analysis of a claim asserting the denial of the constitutional right to a speedy trial is governed by Barker v. Wingo, 407 U.S. at 523. In Barker, the United States Supreme Court identified some of the factors to be considered in determining whether there had been a denial of a speedy trial: "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." Id. at 530. The period of delay starts when a person is accused of a crime and ends when the trial begins. United States v. Marion, 404 U.S. 307 (1971). The arrest, if prior to the indictment, constitutes the initiation of a prosecution for purposes of applying the Barker speedy trial test. Dillingham v. United States, 423 U.S. 64 (1975). The length of delay--acts as a triggering mechanism, because a defendant must first show that the length of delay was presumptively prejudicial. Doggett v. United States, 505 U.S. 647, 651-52 (1992). A one year period between accusation and trial has been recognized as the amount of time necessary to require a speedy trial analysis. Doggett, 505 U.S. at 652 n. 1 ("[T]he lower courts have generally found post-accusation delay 'presumptively prejudicial' at least as it approaches one year . . . . [I]t simply marks the point at which courts deem the delay unreasonable enough to trigger the Barker enquiry."). See United States v. Register, 182 F.3d 820, 827 (11th Cir. 1999), cert. denied 530 U.S. 1250 (2000).

Here, the petitioner was arrested on May 15, 2001 (R.33), and his trial was conducted on February 11, 2003. (Case No. F01-15483, DE#159). The twenty-two-month delay from the time of his arrest to the commencement of the trial proceeding triggers a Barker-inquiry into a constitutional claim of denial of a speedy trial. However, when weighing all of the factors enumerated in Barker, the petitioner has failed to establish a denial of his constitutional right to a speedy trial.

14

The petitioner alleges no facts to indicate that the prosecution deliberately delayed the trial to hamper his defense. On November 9, 2001, the petitioner filed a notice of expiration of speedy trial, stating that his speedy trial had expired on November 6, 2001. (R.33). Prior to the filing of the notice of expiration, a hearing was held on October 25, 2001, wherein defense counsel sought that the State be charged with a continuance. (R.17-32). In support thereof, defense counsel argued that she received copies of the police reports as late as October 17, 2001 and copies of the crime scene photos, the medical examiner's report and a crime scene sketch of the house where the murder occurred as late as October 24, 2001. After the State presented its arguments, the trial judge charged a continuance to the court and reset the trial from November 5, 2001 to November 13, 2001. (<u>Id.</u>:31).

On November 8, 2001, prior to trial, a hearing was held wherein defense counsel once again informed the court she was unprepared and moved for a State charged continuance. (R.34-38). However, in response thereto, the State pointed out that prior to October 23, 2001, defense counsel had failed to take any depositions, and as far as the State was aware, defense counsel had failed to interview the petitioner's family, failed to request the 911 tape and failed to request any documentation. Moreover, the State informed the court that it had alleviated any need for defense counsel to subpoena anyone. (R.77).

The hearing continued the following day, November 9, 2001, wherein defense counsel informed the trial court she still needed to take nine depositions and the time allotted to do so was insufficient. (R.92-93). In response thereto, the State argued that defense counsel had no intention to proceed to trial since depositions were scheduled during and after trial. (R.106-107).

15

Moreover, the State argued that there was no need for a blood splatter expert or a DNA expert as the petitioner confessed to the crime, he never alleged the victim was physical and there was no injury to him. (R.109). Likewise, the medical examiner's report was available to defense counsel on their own, as it was public record. (R.111).

The court then initially offered to set trial for Monday, November 12, 2001, swear in a jury and then bring them back on the following Monday thus providing the defense an ample opportunity to schedule any needed depositions. (R.114-115). However, defense counsel declined the court's offer. (R.115). The trial court then said it would permit the defense to choose a jury on Monday, November 19, 2001 and begin trial on November 26, 2001. (R.115-116). Notwithstanding the court's compromise, defense counsel once again informed the court that she was unable to be ready within the suggested time period and moved for a continuance, which the court granted. (R.116).

The petitioner has failed to establish a denial of his constitutional right to a speedy trial. It is apparent from the above-review history of the criminal proceeding that the postponement of trial proceedings was for the most part occasioned by the actions of the accused himself. See Hill v. Wainwright, 617 F.2d 375, 378 (5th Cir. 1980); United States v. Herman, 576 F.2d 1139, 1145 (5th Cir. 1978). Further, the petitioner alleges no facts to indicate that the prosecution deliberately delayed the trial to hamper his defense. Further, the record reveals that, based upon the several motions for continuances sought and obtained by trial counsel, petitioner had waived his right to a speedy

16

trial.[2] Most significantly, the petitioner has not alleged, let alone demonstrated, that the delay in any way prejudiced his ability to defend the charges against him (i.e., while awaiting trial, defense witnesses may have relocated and their memories faded, other evidence may have grown stale or disappeared, etc.). No constitutional violation has occurred.

In **claim two**, the petitioner asserts the trial court erred in denying petitioner's motion for judgment of acquittal on the charge of second degree murder, denying petitioner his right to due process guaranteed to him by the Sixth and Fourteenth Amendments of the United States Constitution. (DE#2:9).

In support thereof, he argues there was insufficient evidence that petitioner's act was done by ill will, hatred, spite or evil intent. (DE#2:9).

Despite the movant's contentions and although this claim is unexhausted and prospectively procedurally barred, in an abundance of caution, this claim will be addressed on the merits, since it fails to warrant relief.

In Florida, the courts do not grant a motion for judgment of acquittal unless the evidence is such that no view which the jury may lawfully take of it favorable to the opposite party can be sustained under the law. Lynch v. State, 293 So.2d 44, 45 (Fla. 1974)(stating that "[w]here there is room for a difference of opinion between reasonable men as to the proof or facts from which an ultimate fact is sought to be established, or where there is room for such differences as to the inferences which might be drawn

---

[2]In Florida, the right to a speedy trial is waived when the defendant requests a continuance. Fla.R.Crim.P. 3.191(j).

from conceded facts, the court should submit the case to the jury for their finding, as it is their conclusion, in such cases, that should prevail and not primarily the views of the judge.").

A defendant, in moving for a judgment of acquittal, admits not only the facts stated in the evidence admitted at trial, but also admits every conclusion favorable to the adverse party that a jury might fairly and reasonably infer from the evidence. <u>Id.</u> In circumstantial evidence cases, a motion for judgment of acquittal will be granted if the state failed to present evidence from which the jury could exclude every reasonable hypothesis except that of guilt. <u>State v. Law</u>, 559 So.2d 187, 188 (Fla. 1989).

In this case however, the evidence presented at trial was more than sufficient to have permitted a rational trier of fact to find the offenses charged. Therefore, based upon the evidence admitted at trial and applicable Florida law, the petitioner was not entitled to a judgment of acquittal by the trial court. Consequently, the petitioner is entitled to no relief on this claim.

To the extent the petitioner means to argue there was insufficient evidence to support his second degree murder conviction, that claim likewise warrants no relief.

The standard for review of the sufficiency of the evidence on a petition for federal habeas corpus relief is whether the evidence presented, viewed in a light most favorable to the state, would have permitted a rational trier of fact to find the petitioner guilty of the crimes charged beyond a reasonable doubt. <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979); <u>Smith v. White</u>, 815 F.2d 1401 (11th Cir. 1987). This familiar standard gives full play to the

18

responsibility of the jury to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.[3] <u>See</u> <u>Wilcox v. Ford</u>, 813 F.2d 1140, 1143 (11th Cir. 1987), <u>citing</u>, <u>Jackson v. Virginia</u>, 443 U.S. at 326. This standard of review is equally applicable to direct or circumstantial evidence.[4] <u>Jackson v. Virginia</u>, 443 U.S. at 320; <u>United States v. Peddle</u>, 821 F.2d 1521, 1525 (11th Cir. 1987). In the process of reviewing the record to determine whether federal constitutional standards were violated in a habeas petitioner's underlying criminal case, the Court does not close its eyes to the reality of evidence of guilt fairly established in state court. <u>Milton v. Wainwright</u>, 407 U.S. 371, 377-78 (1971). <u>See</u> <u>Delaware v. Van Arsdall</u>, 475 U.S. 673, 684 (1986).

The evidence presented at trial clearly demonstrated that the petitioner intended to murder the victim. Under Florida law, second degree murder is defined as:

> The unlawful killing of a human being, when perpetrated by any act imminently dangerous to another and evincing a depraved mind regardless of human life, although

---

[3]In Florida, the test for the sufficiency of the evidence is whether a "rational trier of fact could have found proof of guilt beyond a reasonable doubt." <u>Melendez v. State</u>, 498 So.2d 1258, 1261 (Fla. 1986) (citing <u>Jackson v. Virginia</u>, 443 U.S. at 307 (1979)). A defendant who challenges the sufficiency of the evidence admits not only the facts stated and the evidence adduced, but also every reasonable inference to be drawn from the evidence that is favorable to the state. <u>Gant v. State</u>, 640 So.2d 1180, 1181 (Fla. 4th DCA 1994). It is for the jury to decide what inferences are to be drawn from the facts. <u>Taylor v. State</u>, 583 So.2d 323, 328 (Fla. 1991). So long as there is sufficient evidence in the record to support such inferences, the appellate court will affirm the judgment. <u>Adkins v. Adkins</u>, 650 So.2d 61, 62 (Fla. 3d DCA 1994).

[4]Similarly in Florida, the <u>Jackson</u> standard for the sufficiency of the evidence is equally applicable to direct or circumstantial evidence.  In Florida, proof based entirely on circumstantial evidence can be sufficient to sustain a conviction provided that other conditions established by Florida caselaw are satisfied.  <u>See</u> <u>Orme v. State</u>, 677 So.2d 258, 258-62 (Fla. 1996) and cases cited therein.

> without any premeditated design to effect the death of
> any particular individual, is murder in the second degree
> and constitutes a felony of the first degree, punishable
> by imprisonment for a term of years not exceeding life .
> . . .

Fla. Stat. §782.04(d) (2001). There was sufficient evidence adduced
at trial to support the charge. Lourdes Cruz, the victim's sister-
in-law, testified that the victim had come to live with her and her
husband in June 2000. (T.301-302). However, in December 2000, the
victim had met someone, moved in with him and became pregnant; they
planned to marry as soon as she was divorced. (T.305,319). On May
15, 2001, the petitioner murdered the victim, who happened to be
his wife. (T.383,402). At the time, the petitioner and the victim
had been separated for almost a year prior to him stabbing her to
death. (T.333). On the day of the murder, the petitioner had not
seen the victim in some time and when he did, it was evident she
was pregnant with another man's child. (T.305). The petitioner then
stabbed the victim multiple times inflicting fatal wounds. (T.531).

Thus, when taken in the light most favorable to the state, the
evidence presented at trial, as summarized herein, was sufficient
to have permitted a rational trier of fact to find that the
petitioner was guilty of the subject crimes. See Jackson v.
Virginia, 443 U.S. 307 (1979). Even if some of the testimony was in
part inconsistent or conflicting, it is apparent that the jury
resolved any such conflicts in testimony against the petitioner,
and drew reasonable inferences from basic facts to ultimate facts,
which is clearly the responsibility of the jury. As was the
prerogative of the jury, after considering the evidence and the
demeanor of the witnesses, it chose to believe the testimony of the
state witnesses. This Court must defer to the jury's judgment as to
the weight and credibility of the evidence. See Wilcox v. Ford, 813
F.2d at 1143. The jury's finding was properly supported by the

evidence at trial, rendering the convictions lawful.

Thus, the appellate court's affirmance of the petitioner's conviction on direct appeal, where this claim was raised and rejected, is again not in conflict with clearly established federal law or based on an unreasonable determination of the facts, and its result should not be disturbed. 28 U.S.C. §2254(d); <u>Williams v. Taylor</u>, <u>supra</u>.

In **claim three**, the petitioner asserts the trial court erred in denying petitioner's requested jury instruction on manslaughter depriving petitioner of a fair trial, guaranteed to him by the Sixth and Fourteenth Amendments of the United States Constitution. (DE#2:11).

Specifically, the petitioner alleges that the trial court's use of the standard jury instruction misled the jury to believe that heat of passion could not negate the depraved mind element of second degree murder.[5] This claim was raised and rejected in the state direct appeal proceeding.

---

[5]The subject jury instruction is as follows:

Before you can find the defendant guilty of manslaughter, a lesser included offense of count one of the information, the State must prove the following two elements beyond a reasonable doubt:

One. Ana Piti is dead.

Two. Dagoberto Martinez intentionally caused the death of Ana Piti, or the death of Ana Piti was caused by the culpable negligence of Dagoberto Martinez.

However, the defendant cannot be guilty of manslaughter if the killing was either justified or excusable as I've previously explained those terms.

(T.756).

The petitioner has failed to establish that the instruction given regarding excusable homicide rendered his trial fundamentally unfair or in any way negated his self-defense theory. The instructions in this case were appropriate to the case and accurately and adequately stated the relevant law. In Florida, the general rule is that in homicide trials where manslaughter appears on the jury form either as a charged or a lesser offense, the jury must be instructed on the definitions of justifiable and excusable homicide unless the defense expressly agreed to or requested an incomplete instruction. See Pena v. State, 901 So.2d 781, 786-87 (Fla. 2005). See also Reyes v. State, 924 So. 2d 932 (Fla. 3d DCA 2006)(holding that in all murder and manslaughter cases, the court must instruct the jury as to the definitions of justifiable and excusable homicide), citing State v. Lucas, 645 So.2d 425 (Fla. 1994). These instructions are to be given "because manslaughter is a residual offense that can only be fully defined by exclusion of the properly explained defenses of excusable and justifiable homicide." Pena, supra. The Florida courts have held that the failure to give a complete instruction on manslaughter during the original jury charge is fundamental error which is not subject to harmless-error analysis where the defendant has been convicted of either manslaughter or a greater offense not more than one step removed, such as second-degree murder. See State v. Lucas, 645 So.2d at 427. See also Thurston v. State, 762 So.2d 558 (Fla. 4 DCA 2000)(reversing conviction where the jury was not instructed on justifiable and excusable homicide at all and where the state conceded that this was fundamental error).

Since the offense of manslaughter was an applicable lesser included offense of the crime charged, and the petitioner made no express agreement or request for an incomplete instruction, the trial court was obligated to instruct the jury on justifiable and

excusable homicide, which it did. (T.752-757). The trial court's instructions properly tracked the language of the standard instruction, see <u>Fla.Std.Jury Instr</u>. (Crim.) 7.1; which in turn tracked the applicable statute, <u>Fla.Stat</u>. §782.04(2) (2001).[6] (<u>See</u> R.755). Accordingly, the trial court properly explained the defenses of excusable and justifiable homicide to the jury and, as such, gave a complete instruction on manslaughter.[7] Although the petitioner now objects to certain language excluded from the instruction, the trial court committed no error in instructing the jury on the offense of manslaughter as it did.[8] <u>See generally</u> <u>In re: Use by the Trial Courts of the Standard Jury Instructions</u>, 198 So. 2d 319, 319 (Fla. 1967)(noting that the standard jury instructions "state as accurately as a group of experienced lawyers and judges could state the law of Florida in simple understandable language.").

---

[6]Excusable homicide is defined as follows:

Homicide is excusable when committed by accident and misfortune in doing any lawful act by lawful means with usual ordinary caution, and without any unlawful intent, or by accident and misfortune in the heat of passion, upon any sudden and sufficient provocation, or upon a sudden combat, without any dangerous weapon being used and not done in a cruel or unusual manner.

<u>Fla.Stat</u>. 782.03 (2001).

[7]Specifically, when instructing the jury on the lesser offense of manslaughter, the court cautioned the jury that, "However, the defendant cannot be guilty of Manslaughter if the killing was either justifiable or excusable homicide as I previously explained those terms." (T.756).

[8]In Florida, trial courts are generally required to adhere to the standard jury instructions after determining whether the standard jury instructions accurately and adequately state the relevant law. <u>See</u> <u>Moody v. State</u>, 359 So.2d 557 (Fla. 4 DCA 1978). When the standard instructions do accurately and adequately state the relevant law, trial courts in Florida are required to give the standard instructions in the absence of extraordinary circumstances. <u>Id</u>.

Even if this Court were to find that the now-challenged language should not have been excluded in the jury instruction, no fundamental error occurred here. Trial counsel was permitted and did forcefully pursue the theory at trial that the petitioner had acted in the heat of passion. (T.709-722). The court also instructed the jury "a killing that is excusable or was committed by the use of justifiable deadly force is however lawful. (T.753)(emphasis added).

The jury was also fully instructed as to the elements of the crime charged, second degree murder, and the lesser offense of manslaughter. (T.752-756). It is important to note that the trial court clearly instructed the jury that the burden was, at all times, on the state to prove the elements of the charged offenses beyond a reasonable doubt. (T.758-759). The burden of proof never shifted to the defense. The instructions given, when viewed in their entirety, did not negate petitioner's theory of defense and permitted the jury to acquit the petitioner if they believed his actions were lawful.

Finally, based on a thorough review of the trial record, the petitioner received a fair trial and the evidence admitted as to his guilt was more than sufficient to support his convictions. See Jackson v. Virginia, 443 U.S. 307, 326 (1979). The evidence consisted of both testimonial and physical evidence, showing that the unarmed victim was stabbed at least eight times. Thus, any error regarding the jury instructions given in this case was, at worst, harmless. See Brecht v. Abrahamson, 507 U.S. 619, 627-30 (1993), citing, Kotteakos v. United States, 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946). No miscarriage of justice occurred here.

24

Accordingly, the state appellate court's affirmance of the petitioner's direct appeal was not in conflict with clearly established federal law or based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Relief must therefore be denied pursuant to 28 U.S.C. §2254(d). <u>Williams v. Taylor</u>, 529 U.S. 362 (2000). <u>See also Mitchell v. Esparza</u>, 540 U.S. 12, 16 (2003)("[A] state court's decision is not 'contrary to . . . clearly established Federal law' simply because the court did not cite [Supreme Court] opinions . . . . [A] state court need not even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'")(<u>quoting</u> <u>Early v. Packer</u>, 537 U.S. 3, 7-8 (2002).

## Evidentiary Hearing

Lastly, to the extent the petitioner appears to argue that he is entitled to a federal evidentiary hearing on his claims (DE#2:13), that claim also warrants no habeas corpus relief here. If a habeas corpus petitioner "alleges facts that, if true, would entitle him to relief, then the district court should order an evidentiary hearing and rule on the merits of the claim." <u>Holmes v. United States</u>, 876 F.2d 1545, 1552 (11th Cir. 1989), <u>quoting</u> <u>Slicker v. Wainwright</u>, 809 F.2d 768, 770 (11th Cir. 1987). However, no hearing is required where the petitioner's allegations are affirmatively contradicted by the record, or the claims are patently frivolous. <u>Holmes</u>, <u>supra</u> at 1553. Here, for the reasons which have been discussed, the petitioner's claims are all affirmatively contradicted by the existing record, so no federal hearing is necessary or warranted.

## Conclusion

25

Based upon the foregoing, it is recommended that this petition for writ of habeas corpus be denied.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

SIGNED this 14th day of July, 2010.

_____
UNITED STATES MAGISTRATE JUDGE

cc:   Dagoberto Martinez, pro se
      DC#M42462
      Hardee Correctional Institution
      6901 State Road 62
      Bowling Green, FL 33834

      Magaly Rodriguez, AAG
      The Florida Bar
      Rivergate Plaza
      444 Brickell Avenue
      Suite M-100
      Miami, FL 33131

      Richard L. Polin, AAG
      Office of the Attorney General
      444 Brickell Ave., Suite 650
      Miami, FL 33131

26